**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.** 0:26-cv-62204-AHS

PAUL O. LOPEZ as Receiver for
INNOVATIVE PARTNERS LP, et al.,

Plaintiff,

v.

ISRAEL FAMILY 1401 UNIVERSITY LLC,
and
K.E.I PROPERTIES, LLC

Defendants.

_________________________________/

**AMENDED COMPLAINT**

Paul O. Lopez as Receiver ("Receiver") for Innovative Partners, LP d/b/a Innovative Health Plan or Healthcare Plan; American Collective, LP, d/b/a ACLP Health Plan; Health Plan Administrators, LLC; Papyrus Green Investments, LLC; Safe Guard Management, LLC and Prosperity Health, LLC (collectively, the "Receivership Entities"), hereby files this Amended Complaint against Israel Family 1401 University LLC ("1401") and K.E.I. Properties, LLC ("KEI") as Defendants.

**PARTIES, JURISDICTION AND VENUE**

1. On April 15, 2026, following the filing of a complaint by the Federal Trade Commission against Innovative Partners, LP d/b/a Innovative Health Plan or Healthcare Plan ("Innovative") and other[1] Receivership Entities, the Court entered a Temporary Restraining Order

[1] Although Safe Guard Management, LLC and Prosperity Health, LLC ("Prosperity") were not initially included as Receivership Entities, they were added after-the-fact. [*See* D.E. 91, 122].



#5041834v1-221271.0001

("TRO"), which, among other things, appointed Paul Lopez as the receiver for Innovative Partners, LP ("Innovative") in Case No: 26-60976-CIV-AHS, pending in the United States District Court for the Southern District of Florida (the "Receivership Action"). [*See* D.E. 13].

2. On May 7, 2026, the Court in the Receivership Action entered a preliminary injunction ("PI") which superseded the provisions of the TRO [D.E. 64, Receivership Action]. The PI contained language virtually identical to the TRO and continued Paul Lopez's appointment as Receiver of the Receivership Entities.

3. The Receiver is authorized to bring this action pursuant to Section XV of the PI.

4. This Court has personal jurisdiction over the Defendant pursuant to 28 U.S.C. § 754 and 28 U.S.C. § 1692, which provide jurisdiction over receivership property, including money and the individuals in possession of that money, and which authorize nationwide service of Case 26-60976-CIV-AHS. The Receiver has complied with the statutory requirements.

5. Further, this Court has supplemental subject-matter jurisdiction because the suit is brought by a court-appointed receiver under the TRO and PI to recover assets within the Receivership Action.

6. Israel Family 1401 University LLC is a Delaware limited liability company that maintains its principal place of business at 1401 N. University Drive, Coral Springs, FL 33071, and is therefore subject to the jurisdiction of this Court.

7. K.E.I. Properties, LLC is a Florida limited liability company that maintains its principal place of business at 1922 NE 149th Stret, North Miami, FL 33181 and is therefore subject to the jurisdiction of this Court.

8. According to the records of the Secretary of State of Florida, the managing principal of KEI is Kenneth Israel. According to the records of the Secretary of State of Florida, the



#5041834v1-221271.0001

managing principal of 1401 is Kenneth Israel. For both entities, Kenneth Israel serves as the registered agent in Florida. As a result, the Plaintiff verifiably believes that the two Defendants have a corporate affiliation and connection.

9. Venue is proper in this jurisdiction.

10. All conditions precedent to bringing this action have either occurred or been waived.

## GENERAL ALLEGATIONS

11. On March 24, 2023, Prosperity entered into a lease agreement with Defendant for the commercial property located on the second floor of 1401 N. University Dr., Coral Springs, FL (the "**Premises**"). A copy of that Lease is attached hereto as **Exhibit "A"** (hereinafter referred to as the "**Lease**").

12. In March 2026, Prosperity entered into a First Amendment of the Lease with the Defendant for the Premises. A copy of the First Amendment to the Lease is attached hereto as **Exhibit "B"** (hereinafter referred to as "**First Amendment**").

13. At all relevant times, Prosperity was under the direct supervision, operation, and control by Ahmed Shokry ("**Shokry**").

14. On October 10, 2024, Shokry voluntarily dissolved Prosperity by filing a notice with the Division of Corporations for the Secretary of State of Florida. At no time after October 10, 2024 was Prosperity reinstated as an active entity in the State of Florida.

15. Beginning in October 2024, at or about the time of the voluntary dissolution of Prosperity, Innovative began paying rent to KEI for the benefit of 1401 for Prosperity's use of the Premises.

16. At all relevant times, Innovative was under the direct supervision, operation, and control of Shokry.

17. After a careful examination of the books and records of Innovative[2], the Receiver and his professionals have been unable to locate any documentation memorializing a lease, contract or other agreement between Innovative and 1401 for the use and occupation of the Premises, or between Prosperity and Innovative constituting a sublease of the Premises.

18. There is no privity of contract between Innovative and 1401 for the use of the Premises.

19. Beginning in October 2024 and continuing through March 2026, Innovative paid KEI, apparently as agent for 1401, the sum of $424,023.00, apparently for the use and occupancy of the Premises.

20. The accounting professionals employed by the Receiver have examined the bank records of Innovative and the other Receivership Entities. A reconciliation and summary of the payments made by Innovative to KEI according to the bank records obtained for Innovative is attached hereto as **Exhibit "C"**. Although the rent obligation was to 1401, the payments were made to KEI.

21. As alleged in the Receivership Action, Innovative was engaged in a scheme of misleading consumers into believing they were purchasing health "insurance policies" through Innovative, when at best, the consumers were purchasing some form of a healthcare discount plan.

---

[2] As a result of the destruction of documents before the appointment of the Receiver, the removal of computers from the Premises and the unwillingness of principals of the Receivership Entities to be examined by the Receiver, the examination of the books and records of the those entities has been hampered.

Said scheme along with the scheme perpetuated by fellow Receivership Entity American Collective LP is alleged to have defrauded a minimum of 100,000 consumers.

22. Upon information and belief, Shokry authorized, initiated, or otherwise caused Innovative to transfer the payments to the Defendant for the benefit of Innovative.

23. The Lease and the First Amendment were between Prosperity and 1401. Innovative was never a party to the Lease or the First Amendment, and at no time held any leasehold, possessory, or other interest in the Premises. Innovative received no property, service, or other thing of value from KEI or 1401 in exchange for the payments.

24. The payments Innovative made to KEI discharged, or purported to discharge, rent obligations of Prosperity to 1401, with Prosperity being a separate legal entity that Shokry had voluntarily dissolved on October 10, 2024, and that was never reinstated. The payments were therefore made solely for the benefit of a third party, and Innovative did not receive a reasonably equivalent value in exchange for the transfers.

25. Innovative is the debtor with respect to the transfers at issue. The creditors of Innovative include the no fewer than 100,000 consumers defrauded through the scheme described above, each of whom holds a "claim" against Innovative within the meaning of section 726.102(4), Florida Statutes. That is, a right to payment, whether or not the right is reduced to judgment, liquidated, fixed, contingent, matured, or disputed. The claims of these creditors arose before and during the period of the transfers at issue, from October 2024 through March 2026.

26. Innovative conducted little or no legitimate business operations. Its revenues were derived from the consumer-fraud scheme described above, and its liabilities to the defrauded consumers and its other creditors exceeded the fair value of its assets. At the time of each transfer to the Defendant, the sum of Innovative's debts was greater than all of its assets at a fair valuation.

Innovative was therefore insolvent within the meaning of section 726.103(1), Florida Statutes, at the time of each transfer, or became insolvent as a result of the transfers.

**COUNT I – ACTUAL FRAUDULENT TRANSFER**
**(Fla. Stat. § 726.105(1)(a))**

27. The Receiver incorporates the allegations set forth in Paragraphs 1 through 26 above as though fully set forth herein.

28. This is a claim to avoid and recover actual fraudulent transfers under section 726.105(1)(a), Florida Statutes, which provides that a transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

29. Innovative, the debtor, made the transfers totaling $424,023.00 to KEI for the benefit of 1401, as set forth on **Exhibit "C"**, between October 2024 and March 2026. Each transfer was a conveyance of Innovative's property that otherwise would have been available to satisfy the claims of Innovative's creditors.

30. The transfers were made with the actual intent to hinder, delay, and defraud Innovative's creditors, including the defrauded consumers. That intent is established by, among other things, the following badges of fraud recognized under section 726.105(2), Florida Statutes:

a. The transfers were made without Innovative receiving a reasonably equivalent value in exchange, because Innovative held no interest in the Premises and the payments discharged the obligations of Prosperity, a separate entity. Fla. Stat. § 726.105(2)(h).

b. Innovative was insolvent at the time of the transfers. Fla. Stat. § 726.105(2)(i).

c. The transfers were not disclosed or memorialized in any lease, sublease, contract, or other agreement between Innovative and the Defendant, and there



#5041834v1-221271.0001

was no privity of contract between Innovative and either Defendant. Fla. Stat. § 726.105(2)(c).

d. The transfers began at or about the time Shokry voluntarily dissolved Prosperity, the entity actually obligated on the Lease, on October 10, 2024. Fla. Stat. § 726.105(2)(j).

e. Innovative and Prosperity were each under the direct supervision, operation, and control of Shokry, who authorized, initiated, or otherwise caused the transfers, so that the transfers were made to pay the obligations of an entity affiliated with and controlled by the same insider. Fla. Stat. § 726.105(2)(a).

31. In addition, and independently, because all or substantially all of Innovative's revenues were derived from the fraudulent scheme described above, the transfers of those funds were made with the actual intent to hinder, delay, and defraud Innovative's creditors and the consumers defrauded by that scheme.

32. Efforts to trace and document the transfers were further hindered by the destruction of documents before the appointment of the Receiver and the removal of computers from the Premises.

33. Pursuant to sections 726.108 and 726.109, Florida Statutes, the Receiver is entitled to avoid the transfers and to recover the transfers, or the value of the transfers, from the Defendant.

WHEREFORE, the Receiver requests this Court avoid the fraudulent transfers to both KEI and 1401, enter final judgment in the Receiver's favor and against KEI and 1401 in the amount of $424,023.00, and grant all further relief this Court deems just and proper.

**COUNT II – CONSTRUCTIVE FRAUDULENT TRANSFER**
**(Fla. Stat. § 726.105(1)(b) and 726.106(1))**

34. The Receiver incorporates the allegations set forth in Paragraphs 1 through 26 above as though fully set forth herein.

35. Innovative transferred property by making payments totaling $424,023.00 to KEI for the benefit of 1401 between October 2024 and March 2026, as set forth on **Exhibit "C"**.

36. Innovative did not receive a reasonably equivalent value in exchange for the transfers. Innovative was not a party to the Lease or the First Amendment, held no interest in the Premises, and received no property, service, or other thing of value from either Defendant. The transfers instead discharged, or purported to discharge, the rent obligations of Prosperity, a separate entity, and were thus made solely for the benefit of a third party.

37. The transfers are fraudulent as to Innovative's creditors under section 726.105(1)(b), Florida Statutes, because Innovative made the transfers without receiving a reasonably equivalent value in exchange and, at the time, Innovative was engaged in or about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Innovative intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

38. The transfers are also fraudulent as to Innovative's creditors under section 726.106(1), Florida Statutes. The claims of Innovative's creditors, including the defrauded consumers, arose before the transfers were made; Innovative made the transfers without receiving a reasonably equivalent value in exchange; and Innovative was insolvent at the time of the transfers or became insolvent as a result of the transfers.

39. Pursuant to sections 726.108 and 726.109, Florida Statutes, the transfers should be avoided and recovered from the Defendant for the benefit of the receivership estate and Innovative's creditors.

WHEREFORE, the Receiver requests this Court enter final judgment in the Receiver's favor and against KEI and 1401 in the amount of $424,023.00, and all further relief this Court deems just and proper.

Dated: August 17, 2026

Respectfully submitted,

TRIPP SCOTT, P.A.
As Counsel to the Receiver
110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Phone: (954) 525-7500

By: /s/Charles M. Tatelbaum
Charles M. Tatelbaum, Esquire
Florida Bar No. 177540
cmt@trippscott.com
David A. Ray Esquire
Florida Bar No. 13871
dar@trippscott.com
Corey D. Cohen, Esquire
Florida Bar No. 1024891
cdc@trippscott.com
Jennifer H. Wahba, Esquire
Florida Bar No. 1010093
jmh@TrippScott.com

I HEREBY CERTIFY that on this 17th day of August, 2026 a copy of the foregoing Amended Complaint was served on Robert Reynolds, Esq. by email at rreynolds@loriumlaw.com, has attorney for the Defendants who had previously agreed to accept service of process.

By:/s/Charles M. Tatelbaum____
Charles M. Tatelbaum