**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:26-cv-62204-AHS**

PAUL O. LOPEZ as Receiver for
INNOVATIVE PARTNERS LP, et al.,

Plaintiff,

v.

ISRAEL FAMILY 1401 UNIVERSITY LLC,
and K.E.I PROPERTIES, LLC

Defendants.
_________________________________________/

**DEFENDANTS' ANSWER AND AFFIRMATIVE**
**DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

The Defendants, Israel Family 1401 University LLC ("1401 University") and K.E.I. Properties, LLC ("K.E.I." and collectively with 1401 University the "Defendants"), by and through undersigned counsel, files Defendants' Answer to Amended Complaint as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Defendants are without knowledge as to the allegations contained in Paragraph 1 and therefore deny same.

2. Defendants are without knowledge as to the allegations contained in Paragraph 2 and therefore deny same.

3. Defendants are without knowledge as to the allegations contained in Paragraph 3 and therefore deny same.

4. Defendants are without knowledge as to the allegations contained in Paragraph 4 and therefore deny same.

5. Defendants are without knowledge as to the allegations contained in Paragraph 5 and therefore deny same.

6. Defendants admit Paragraph 6.

7. Defendants admit Paragraph 7.

8. Defendants admit Paragraph 8.

9. Defendants are without knowledge as to the allegations contained in Paragraph 9 and therefore deny same.

10. Defendants are without knowledge as to the allegations contained in Paragraph 10 and therefore deny same.

**GENERAL ALLEGATIONS**

11. In response to Paragraph 11 Defendants admit that 1401 University and Prosperity Heath, LLC ("Prosperity") entered into the Lease (as defined in the Amended Complaint) attached as Exhibit "A" to the Amended Complaint. Defendants further aver that Prosperity was not the only entity that occupied the premises. The attached document speaks for itself. Any remaining allegations not addressed above are denied.

12. In response to Paragraph 12 Defendants admit that 1401 University and Prosperity entered into the Amendment (as defined in the Amended Complaint) attached as Exhibit "B" to the Amended Complaint. Defendants further aver that Prosperity was not the only entity that occupied the premises. The attached document speaks for itself. Any remaining allegations not addressed above are denied.

13. Defendants are without knowledge as to the allegations contained in Paragraph 13 and therefore deny same.

14. Defendants are without knowledge as to the allegations contained in Paragraph 14 and therefore deny same.

15. Defendants are without knowledge as to the allegations contained in Paragraph 15 and therefore deny same.

16. Defendants are without knowledge as to the allegations contained in Paragraph 16 and therefore deny same.

17. Defendants are without knowledge as to the allegations contained in Paragraph 16 and therefore deny same.

18. Defendants deny the allegations of Paragraph 18.

19. In response to Paragraph 19 Defendants admit receiving payment for the use of the premises but are unsure as of the filing of this Answer if the amounts referenced in Paragraph 19 are accurate and therefore deny same. Defendants further aver that whoever paid for the use of the premises did in fact occupy and utilize the premises. Any remaining allegations are denied.

20. In response to Paragraph 20 Defendants admit receiving payment for the use of the premises but are unsure as of the filing of this Answer if the amounts referenced in Paragraph 20 are accurate and therefore deny same. Defendants further aver that whoever paid for the use of the premises did in fact occupy and utilize the premises. Any referenced exhibit speaks for itself. Any remaining allegations are denied.

21. Defendants are without knowledge as to the allegations contained in Paragraph 21 and therefore deny same.

22. Defendants are without knowledge as to the allegations contained in Paragraph 16 and therefore deny same.

23. Defendants deny the allegations of Paragraph 23.

24. Defendants deny the allegations of Paragraph 24.

25. Defendants are without knowledge as to the allegations contained in Paragraph 25 and therefore deny same.

26. Defendants are without knowledge as to the allegations contained in Paragraph 26 and therefore deny same.

**COUNT I – ACTUAL FRAUDULENT TRANSFER**
**(Fla. Stat. § 726.105(1)(a))**

27. The Defendants adopt the responses to Paragraphs 1-26 above as if they were fully set forth herein.

28. In response to Paragraph 28 Defendants admit the allegations of Count I state a cause of action but deny that the Plaintiff Receiver is entitled to any relief whatsoever.

29. In response to Paragraph 29 Defendants admit receiving payment for the use of the premises but are unsure as of the filing of this Answer if the amounts referenced in Paragraph 29 are accurate and therefore deny same. Defendants further aver that whoever paid for the use of the premises did in fact occupy and utilize the premises. Any referenced exhibit speaks for itself. Any remaining allegations are denied.

30. Defendants deny the allegations contained in Paragraph 30.

31. Defendants deny the allegations contained in Paragraph 31.

32. Defendants are without knowledge as to the allegations contained in Paragraph 32 and therefore deny same.

33. Defendants deny the allegations contained in Paragraph 33.

**COUNT II – CONSTRUCTIVE FRAUDULENT TRANSFER**
**(Fla. Stat. § 726.105(1)(b) and 726.106(1))**

34. The Defendants adopt the responses to Paragraphs 1-26 above as if they were fully set forth herein.

35. In response to Paragraph 35 Defendants admit receiving payment for the use of the premises but are unsure as of the filing of this Answer if the amounts referenced in Paragraph 35 are accurate and therefore deny same. Defendants further aver that whoever paid for the use of the premises did in fact occupy and utilize the premises. Any referenced exhibit speaks for itself. Any remaining allegations are denied.

36. Defendants deny the allegations contained in Paragraph 36.

37. Defendants deny the allegations contained in Paragraph 37.

38. Defendants deny the allegations contained in Paragraph 38.

39. Defendants deny the allegations contained in Paragraph 39.

**GENERAL DENIAL**

40. Defendants deny any allegations in the Amended Complaint not specifically addressed above.

**AFFIRMATIVE DEFENSES**

**Allegations Common to All Affirmative Defenses**

41. As the Amended Complaint alleges the Plaintiff Receiver was appointed in Case No. 26-60976-CIV-AHS (the "FTC Case"). The Federal Trade Commission ("FTC") initiated the FTC Case when it filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Relief (the "FTC Complaint") on April 7, 2026 (Dkt. No. 1 in the FTC Case).

42. In the FTC Complaint the FTC alleged that the defendants in the FTC Case, including Innovative Partners, LP ("Innovative"), the alleged transferor in this case, were operating

an unfair and deceptive marketing and sale scheme related to healthcare-related products. According to the FTC, the defendants in the FTC Case were violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and related statutes and rules. The FTC alleged that Ahmed Shokry ("Shokry"), who the Receiver alleged executed the lease for the premises at issue in this case, was the mastermind of the scheme.

43. The FTC further alleged in paragraph 16 of the FTC Complaint that "Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, and office locations, and that commingled funds." The FTC thus acknowledged that the various companies, including Innovative and Prosperity, were all part of the overall business conglomeration.

44. The relationships were so close that the FTC alleged in the FTC Complaint that Innovative was "a Texas limited partnership with its principal place of business at 1401 North University Drive, Suite 207, Coral Springs, Florida 33071." (emphasis added). Thus, contrary to the Receiver's allegations, Innovative occupied the leased premises and thus received a benefit from any amounts that it paid.

45. The FTC repeated its allegations in other filings that the various corporate entities were all operating a common enterprise and business.

46. In the order appointing the Receiver (Dkt. No. 13 in the FTC case) the Court authorized the FTC and the Receiver to immediately access Innovative's locations. The order specifically stated that "Such locations include 1401 N. University Drive, Suites 200–207, Coral Springs, Florida 33017[.]" *Sealed Ex Parte Temporary Restraining Order With Asset Freeze, Appointment of a Receiver, Other Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue* (the "*Receiver Order*") entered in the FTC Case at Dkt. No. 13.

47. The reason the *Receiver Order* authorized the Receiver and the FTC to access the premises on an immediate basis is because, again contrary to the Receiver's allegations, Innovative was occupying the premises.

48. The Receiver himself has acknowledged that Innovative was occupying the premises. On May 6, 2026 the Receiver filed a motion to sell certain personal property located at the leased premises (Dkt. No. 61 in the FTC Case), thus representing to this Court that Innovative had an interest in the personal property, which again is an acknowledgement that Innovative was occupying the premises.

49. The Receiver also sought to expand his receivership to include Prosperity – the entity the Receiver alleges was the party to the lease attached to the Amended Complaint. The Receiver conveniently failed to include this fact in his Amended Complaint.

50. In seeking to expand the receivership the Receiver has also acknowledged and in fact asserted as if they were his own the allegations contained in the FTC Complaint, <u>including the allegation that Innovative's principal place of business was the leased premises the Receiver now claims Innovative paid for but did not benefit from.</u> See Receiver's Expedited Motion for the Appointment of a Receiver for Prosperity Health, LLC, Page 2 ("For an initial factual background, the Receiver incorporates by reference the factual discussion in the Federal Trade Commission's Complaint For Permanent Injunction Monetary Judgment, And Other Relief Emergency [D.E 1] filed in this proceeding which led to the entry of a Temporary Restraining Order which included the appointment the Receiver [D.E. 13] (the "Receivership Order") on April 15, 2026") (Dkt. No. 73 in the FTC Case).

51. The Receiver also relied on the provisions of the *Stipulated Preliminary Injunction* entered in the FTC Case (Dkt. No. 64) which defined "Receivership Entities" as "Corporate

Defendant(s) as well as any other entity that has conducted any business related to the marketing, sale, and provision of Defendants' healthcare-related products, including by receiving Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant." See Receiver's Reply in Support of Receiver's Expedited Motion for the Appointment of a Receiver for Prosperity Health, LLC (Dkt. No. 81 in the FTC Case) at page 2 ("A preliminary analysis of available bank statements provides overwhelming evidence that Prosperity is or was hopelessly enmeshed with Innovative[.]")

52. The Court entered an order in the FTC Case on June 25, 2026 (Dkt. No. 91) adding Prosperity to the receivership. So, what the Receiver would have this Court believe is that, despite the allegations in the various filings in the FTC case that Innovative's place of business was the leased premises and that Innovative and Prosperity were "hopelessly enmeshed," Innovative somehow received no benefit for the alleged payments. These claims fly in the face of the FTC and Receiver's filings in the FTC Case.

53. Innovative thus was an occupant of the leased premises and thus received full value for any alleged transfers to Defendants.

54. The absence of a written lease or sublease naming Innovative does not establish that Innovative received no value from the rent payments. To the extent Innovative used the premises, housed personnel or operations there, maintained access to the premises, shared the premises with an affiliated entity, obtained continuity of operations, or otherwise benefited from continued occupancy, Innovative received direct and/or indirect value from the payments.

55. Plaintiff bears the burden of proving that Innovative did not receive reasonably equivalent value. *Stermer v. Old Republic Nat'l Title Ins. Co. (In re ATIF, Inc.)*, 160 F.4th 1124, 1142 (11th Cir. 2025) (citation omitted). The concept of reasonably equivalent value in Section

726.105(2)(h) does not require an exact dollar amount in exchange for property; rather, courts review the totality of the circumstances in determining whether a transferor received reasonably equivalent value in exchange for a transfer it made or an obligation it incurred. *Id.* (citations omitted).

56. Payment of recurring rent consistent with the historical or market cost of the Premises defeats Plaintiff's assertion that Innovative received no value merely because it was not a named party to the lease. The payments preserved access to premises used for Innovative's benefit and prevented the accrual or enforcement of unpaid occupancy charges.

57. Plaintiff therefore cannot establish that Innovative received less than reasonably equivalent value solely by relying on the absence of a written lease or sublease.

58. In addition to the foregoing, the corporate forms of Innovative and Prosperity are due to be disregarded. The allegations the FTC and Receiver made demonstrate that the corporate form was abused, so whether called alter ego or some other doctrine, Innovative and Prosperity should be treated as one entity for purposes of this case.

59. Because Innovative and Prosperity are one and the same, Innovative received value for any alleged transfers to Defendants.

60. The Defendants also acted in good faith. The fact that Innovative, Prosperity and the other individuals were operating an alleged fraudulent scheme does not require Defendants to return rent payments when the Defendants provided the leased premises and Prosperity and Innovative actually occupied them:

> Simply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance. If so, every vendor supplying goods to the debtor would receive an avoidable fraudulent transfer when the debtor paid the vendor's invoice. Every employee, even lower-level custodial and clerical employees, would be required to return their wages, regardless of the work they performed. Landlords would have to return rent payments, even if the debtor

> actually occupied the leased premises . . . The law does not require this result . . . Other recipients, such as third party vendors and landlords, probably can demonstrate good faith with relative ease. These types of recipients only deliver goods or rent buildings and have no reason and, more importantly, no duty to inquire into the nature of the debtor's business.

*In re World Vision Entertainment, Inc.*, 275 B.R. 641, 658-659 (Bankr. M.D. Fla. 2002) (emphasis added).

61. Defendants accepted the challenged payments in good faith as recurring commercial rent for the use and occupancy of the leased premises and had no knowledge of Innovative's and Prosperity's alleged consumer-fraud scheme, fraudulent purpose, insolvency, or intent to hinder, delay, or defraud Innovative's creditors, and had no duty to investigate them. Defendants are therefore entitled to retain any payments made as the payments were received in good faith and for value.

62. In addition to the foregoing, Defendants also aver that Defendant KEI was nothing more than a mere conduit and thus cannot be held liable for any transfers.

63. KEI receives payments of rent for various companies, including 1401 University. However, the funds always belonged to 1401 University and not to KEI. KEI would transfer any payments received to an account in the name of 1401 University within a few days of receipt and did not keep any funds. KEI thus did not have the required dominion and control over the funds to be the initial transferee and thus cannot be liable for any alleged transfers. *See In re Chase & Sanborn Corp.*, 848 F.2d 1196 (11th Cir. 1988).

64. Lastly, to the extent the Receiver is entitled to any recovery from 1401 University, 1401 University asserts a setoff as the result of the Receiver selling certain items of personal property that belonged to 1401 University and not Innovative or Prosperity. On May 6, 2026 the

Receiver filed a motion to sell certain personal property located at the leased premises (Dkt. No. 61 in the FTC Case). The Receiver represented that Innovative owned the personal property.

65. Certain items of personal property – a conference room table, desks, dividers for cubicles, chairs, and other items actually belonged to 1401 University, not Innovative or Prosperity.

66. The Receiver did not give notice that he was selling 1401 University's property.

67. 1401 University has provided video evidence demonstrating that the personal property was in the premises before Innovative and Prosperity took possession, thus demonstrating that the personal property belonged to 1401 University. The Receiver refused to return any property and refused to reimburse 1401 University for the property that was sold.

**First Affirmative Defense**

68. Defendants adopt Paragraphs 41-67 into this First Affirmative Defense as if they were fully set forth herein.

69. As and for a first affirmative defense Defendants assert they are entitled to the protections of Florida Statute § 729.109(1) as they received any payments for value and in good faith as set forth above.

**Second Affirmative Defense**

70. Defendants adopt Paragraphs 41-67 into this First Affirmative Defense as if they were fully set forth herein.

71. As and for a first affirmative defense Defendants assert they are entitled to the protections of Florida Statute § 729.109(4)(a), (b) and (c) as they received any payments for value and in good faith as set forth above.

**Third Affirmative Defense**

72. Defendants adopt Paragraphs 41-67 into this First Affirmative Defense as if they were fully set forth herein.

73. As and for a third affirmative defense Defendants aver that KEI cannot be held liable for any alleged transfers because KEI was a mere conduit and did not exercise the requisite dominion and control over any funds allegedly transferred to impose liability on KEI for the reasons stated above.

**Fourth Affirmative Defense**

74. Defendants adopt Paragraphs 41-67 into this First Affirmative Defense as if they were fully set forth herein.

75. As and for a fourth affirmative defense Defendants aver that to the extent 1401 University is liable for any transfers 1401 University is entitled to a setoff for the value of any personal property the Receiver sold that was in fact the property of 1401 University.

**Fifth Affirmative Defense**

76. Defendants adopt Paragraphs 41-67 into this First Affirmative Defense as if they were fully set forth herein.

77. As and for a fifth affirmative defense Defendants aver that the Receiver cannot recover on his fraudulent transfer theories because Innovative and Prosperity were essentially alter egos of each other, meaning that value given to one was value to the other. The Receiver and FTC's own allegations show they believe that Innovative and Prosperity did not follow corporate formalities, were "hopelessly enmeshed" with each other, and were utilized to perpetrate a fraud of which Defendants were unaware and had no duty to investigate or discover. Innovative listed the premises as its principal place of business, a fact the FTC alleged in the FTC Complaint. These

allegations that the FTC made and the Receiver adopted demonstrate that the two companies operated as one, meaning that both received value from Defendants who provided access to premises used for Innovative's benefit. The Receiver's claims are therefore meritless. *See Kapila v. TD Bank, N.A., (In re Pearlman)*, 460 B.R. 306, 315-317 (Bankr. M.D. Fla. 2011) (granting summary judgment to transferee when debtor and alleged "wrong payor" were alter egos).

**JURY TRIAL DEMANDED**

78. Defendants demand trial by jury on any and all issues.

WHEREFORE, having fully answered, Defendants demand judgment on their behalf, request the Court award Defendants the costs of defending this action as well as grant any other relief the Court deems proper under the circumstances.

Dated this 19th day of October, 2026.

**LORIUM LAW**
*Counsel for the Defendants*
100 N.E. Third Avenue, Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 462-8000
Facsimile: (954) 462-4300

By: */s/ Robert F. Reynolds*
Robert F. Reynolds
Florida Bar No. 174823
rreynolds@loriumlaw.com

**CERTIFICATE OF SERVICE**

I CERTIFY that a true copy of the foregoing has been served via email through the Court's e-portal to all parties listed on the Service List below on this 19th day of October, 2026.

*/s/ Robert F. Reynolds*
Robert F. Reynolds

**SERVICE LIST**

Corey Daniel Cohen, Esq. - cdc@trippscott.com

David Andrew Ray, Esq. - dar@trippscott.com

Charles M. Tatelbaum, Esq. - cmt@trippscott.com

Jennifer Helmy Wahba, Esq. - jmh@trippscott.com